# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| NDIOBA NIANG, | ) | |
| and TAMEKA STIGERS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. _____ |
| | ) | |
| EMILY CARROLL, in her official | ) | |
| capacity as Executive Director of the | ) | |
| Missouri Board of Cosmetology and | ) | |
| Barber Examiners; WAYNE | ) | |
| KINDLE, BETTY LEAKE, JACKIE | ) | |
| CROW, JOSEPH NICHOLSON, | ) | |
| LEATA PRICE-LAND, and LORI | ) | |
| GLASSCOCK, in their official | ) | |
| capacities as members of the | ) | |
| Missouri Board of Cosmetology and | ) | |
| Barber Examiners; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

This lawsuit seeks to vindicate the rights of Plaintiffs Ndioba "Joba" Niang and Tameka

Stigers, who wish to provide African-style hair braiding in Missouri for compensation. The State

of Missouri prevents Plaintiffs from lawfully pursuing their chosen livelihood by threatening to

impose fines and enforcing arbitrary, excessive, and anachronistic occupational licensing laws

1

and regulations. Specifically, Missouri requires African-style hair braiders to be licensed cosmetologists, which requires at least 1,500 hours of cosmetology training at a licensed cosmetology school and passing a written and a practical exam, even though cosmetology has nothing to do with African-style hair braiding. In doing so, the state deprives Plaintiffs of their right to economic liberty and deprives the community of legal African-style hair braiding. Application of these occupational licensing laws denies Plaintiffs' rights under the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION

1.      Plaintiffs bring this civil rights lawsuit pursuant to the Fourteenth Amendment to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgments Act, 28 U.S.C. § 2201, for injunctive and declaratory relief against the enforcement of the state's cosmetology licensing regime—Mo. Rev. Stat. §§ 329.010 et seq., its implementing rules and regulations, and the practices and policies of the Missouri Board of Cosmetology and Barber Examiners—as it is applied to restrict persons who practice African-style hair braiding, including Plaintiffs. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

2.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff Ndioba "Joba" Niang is a United States citizen and resident of the City of Florissant in the county of St. Louis, Missouri. She came to the United States from France in 1998 and has been practicing African-style hair braiding for more than fifteen

years. Since 2001, Joba has run her own successful African-style hair-braiding business in Missouri, providing her family with much needed financial support.

4.      Plaintiff Tameka Stigers is a United States citizen and resident of the City of St. Louis, in the county of St. Louis, Missouri. Tameka has been professionally providing African-style hair-braiding services to her community for the past six years. Her successful business is important to the financial security of her family and provides her diverse community with a valuable service.

5.      Defendant Emily Carroll is the Executive Director of the Missouri Board of Cosmetology and Barber Examiners (the "Board"), located in Jefferson City, in the county of Cole, Missouri. She is being sued in her official capacity. The Board is authorized by Mo. Rev. Stat. § 329.025 to regulate the practices of barbering and cosmetology in the state of Missouri, to issue licenses, and to discipline persons deemed to be in violation. Plaintiffs sue Defendant in her official capacity as the agent responsible for carrying out enforcement of the cosmetology licensing regime.

6.      Plaintiffs also sue the individual members of the Board, in their official capacities, as the agents ultimately responsible for carrying out enforcement of the cosmetology licensing regime. The Board members are: Wayne Kindle, President; Betty Leake, Vice President; Jackie Crow, Secretary; Joseph Nicholson, Member; Leata Price-Land, Member; Lori Glasscock, Public Member.

## STATEMENT OF FACTS

**Plaintiff Ndioba "Joba" Niang**

7.    Joba has been braiding hair professionally for more than 15 years. She began braiding when she emigrated from France to the United States in 1998 to join her husband and pursue the American dream.

8.    Upon becoming pregnant with her first child, Joba began to braid professionally in order to help support her growing family. In 2001, she opened Joba Hair Braiding, located at 12759 New Halls Ferry Rd., Florissant, Missouri 63033. She has been successfully operating her hair-braiding business for 13 years.

9.    Joba Hair Braiding exclusively provides African-style hair-braiding services. Joba is not a licensed cosmetologist. Joba has, however, been issued a cosmetology establishment license (commonly referred to as a "salon license") from the Board, which allows her to have licensed cosmetologists provide cosmetology services at her business. Joba accommodates a licensed cosmetologist who rents space periodically, but who does not perform African-style hair braiding. Joba acquired the salon license and allows a licensed cosmetologist to rent space in order to insulate herself from the Board's enforcement of cosmetology licensing requirements against her African-style hair braiding.

10.    A salon license does not allow Joba, or anyone else, to practice African-style hair braiding unless they are a licensed cosmetologist.

11.    Joba has been the primary income-earner for her family for several years. Her husband was forced to close his restaurant upon being diagnosed with cancer more than four years ago. Joba's hair-braiding business has provided her family with much-needed financial stability and security.

4

12.     Joba previously attempted to complete the 3,000 hour cosmetology apprenticeship program from 2003 to 2005 in order to become a licensed cosmetologist for the sole purpose of legally providing African-style hair braiding services in Missouri. After completing more than 1,000 hours of cosmetology apprenticeship training under a licensed cosmetologist, she ceased participation in the program because the cosmetology apprenticeship program did not include African-style hair braiding, the licensed cosmetologist she was working with did not have any knowledge of African-style hair braiding, and the licensed cosmetologist was unable to teach Joba any skills necessary to provide African-style hair braiding services. Furthermore, Joba did not have any interest in learning how to provide cosmetology services. Joba has no interest in participating in the cosmetology apprenticeship program again.

13.     If this lawsuit is unsuccessful and the Board forces Joba to become a licensed cosmetologist simply to perform African-style hair braiding, she will be forced to close her business.

**Plaintiff Tameka Stigers**

14.     Tameka has been braiding hair professionally since 2008. She was pursuing a career in public health, and had recently acquired her Master's degree, when she decided that a career in African-style hair braiding would be more rewarding. Inspired by the frequent requests for braiding services by the families of her diverse church community and neighborhood, Tameka undertook training to become a certified consultant in Sisterlocks, a proprietary African-style hair-braiding technique created by Dr. JoAnne Cornwell.

15.     After providing African-style hair-braiding services for several years, Tameka recently partnered with her two sisters and a fellow Sisterlocks Consultant to expand her business,

5

Locs of Glory, and open her own store-front location at 5860 Delmar Blvd., Suite 100, St. Louis, Missouri 63112. Although her sisters have received cosmetology and barber training, respectively, Tameka is not a licensed cosmetologist and exclusively provides African-style hair-braiding services. She believes that her African-style hair braiding is the core of the business and differentiates her business from competing cosmetology salons.

16.    Tameka's African-style hair braiding has made an important contribution to her community, particularly for interracial foster and adoptive parents who are often at a loss for how to care for tightly textured hair and are unfamiliar with the cultural significance of natural hair care.

17.    Prior to this lawsuit, Tameka had made plans to begin an at least 3,000 hour cosmetology apprenticeship, which would likely take at least two years to complete. The sole purpose of her apprenticeship was to comply with the cosmetology licensing requirements and the Board's enforcement of those requirements against African-style hair braiding. She does not intend to personally provide any cosmetology services, has no interest in learning to provide cosmetology services, and does not believe that cosmetology training is relevant to the practice of African-style hair braiding. But for the Board's enforcement of the cosmetology licensing requirements against African-style hair braiders, Tameka would not have made plans to enter into the at least 3,000 hour apprenticeship program. Tameka will not be forced to do this irrelevant, time-consuming, and wasteful apprenticeship if this lawsuit is successful, and she has abandoned her plans to enter the cosmetology apprenticeship program in the hope that this lawsuit will be successful.

18.     If this lawsuit is unsuccessful and the Board forces Tameka to become a licensed

cosmetologist simply to practice African-style hair braiding, she will either have to spend

at least 3,000 unnecessary hours and hundreds of dollars completing an apprenticeship

program that does not provide any instruction on African-style hair braiding or cease

providing African-style hair braiding for compensation at her own business.

**African-Style Hair Braiding**

19.     As used in this Complaint, "African-style hair braiding" refers to braiding, locking,

twisting, weaving, cornrowing, or otherwise physically manipulating hair without the use

of chemicals that alter the hair's physical characteristics. It incorporates both traditional

and modern styling techniques. African-style hair braiding is a method of natural hair

care.

20.     African-style hair braiding is so called because it has distinct geographic, cultural,

historical and racial roots. The basis for African-style hair-braiding techniques originated

many centuries ago in Africa and were brought by Africans to this country, where they

have endured (and have been expanded upon) as a distinct and popular form of hair

styling primarily done by and for persons of African descent.

21.     The practice of African-style hair braiding is quite distinct from other types of styling

more common in the United States and is dramatically different from general hair

braiding, such as simple French braids. African-style hair braiding is a labor-intensive

process, usually taking a single stylist multiple hours to complete.

22.     Often, persons of African descent learn to braid textured hair as children or teens, usually

by first learning to do their own hair or that of friends and relatives.

7

23. African-style hair braiding is typically performed on hair that is physically unique, often described as "tightly textured" or "coily" hair. This physical characteristic is genetically determined to be in close correlation with race. In the United States, African-style hair braiding is most popular with men and women of African descent, who tend to have more textured hair. For many of these individuals the choice of African-style hair braiding (rather than mainstream styles taught in cosmetology schools) is as much a cultural statement and expression of self-identity as it is simply an aesthetic concern.

24. The concept of natural hair care is particularly meaningful for many African Americans because for decades Western culture pressured African Americans to use chemicals or heat to straighten their hair. These Western methods are still prevalent in American cosmetology schools. African-style hair braiding provides an alternative to current "corrective" measures by working with a person's natural hair texture.

25. Because the use of chemicals is anathema to natural hair care, African-style hair-braiding techniques are safe for practitioners and customers. For many women with textured hair, African-style hair braiding provides a reprieve after years of harsh chemical treatment of their hair. For example, sodium hydroxide, the active ingredient in many hair straighteners, has a high incidence of chemical burns because it is very caustic. It is capable of burning human hair and skin.

26. While African-style hair braiding uses no chemicals to physically change textured hair, the use of hair extensions in braiding can change the physical appearance of the hair. It can either enhance the versatility of the natural hair or make the hair appear straight, curly, long, short, differently textured, and/or colored, without affecting or damaging a person's own hair.

27.    Joba, Tameka, and other African-style hair braiders rely on their experience, skills, and common or simple tools used by women to do their own hair—such as combs, picks, and hair ties—to create intricate, diverse, and expressive hair styles.

**Missouri's Regulation of Cosmetology**

28.    Missouri's cosmetology regime is codified at Mo. Rev. Stat. §§ 329.010, et seq. The Board of Cosmetology and Barber Examiners was created pursuant to S.B. 280, 93rd Gen. Assemb., Reg. Sess. (Mo. 2005).

29.    Mo. Rev. Stat. § 329.015(1)–(4) establishes the composition of the Board and the length of terms of its members.

30.    Mo. Rev. Stat. § 329.010(5)(a) defines cosmetology as:

> arranging, dressing, curling, singeing, waving, permanent waving, cleansing, cutting, bleaching, tinting, coloring or similar work upon the hair of any person by any means; or removing superfluous hair from the body of any person by means other than electricity, or any other means of arching or tinting eyebrows or tinting eyelashes. . . . [A]ny person who either with the person's hands or with mechanical or electrical apparatuses or appliances, or by the use of cosmetic preparations, antiseptics, tonics, lotions or creams engages for compensation in any one or any combination of the following: massaging, cleaning, stimulating, manipulating, exercising, beautifying or similar work upon the scalp, face, neck, arms or bust.

31.    The Board construes the definition of cosmetology above in Mo. Rev. Stat. § 329.010(5) to include the practice of African-style hair braiding, even though the practice of African-style hair braiding is very different from the practice of cosmetology.

32. Mo. Rev. Stat. § 329.030 provides that it is "unlawful for any person in this state to engage in the occupation of cosmetology or to operate an establishment . . . of cosmetology, unless such person has first obtained a license."

33. Mo. Rev. Stat. § 329.010(4), (5) indicates, however, that those who engage in the practice of cosmetology without compensation do not require a license.

34. Mo. Rev. Stat. § 329.250 provides that the practice of cosmetology without a license is a class C misdemeanor punishable by criminal penalties and fines of $300 pursuant to Mo. Rev. Stat. § 560.016.

**Missouri's Regulation of African-Style Hair Braiding as Cosmetology**

35. The Board is actively enforcing cosmetology licensing laws against African-style hair braiders not engaged in the practice of cosmetology.

36. The Board requires that African-style hair-braiding businesses, which do not engage in the practice of cosmetology, acquire a cosmetology establishment license ("salon license") and that all individuals providing African-style hair-braiding services be individually licensed as cosmetologists.

37. The Board's enforcement of cosmetology licensing laws against African-style hair braiders not engaged in the practice of cosmetology is demonstrated by proceedings against MIKA Hair Braiding for allowing individuals not licensed as cosmetologist to perform African-style hair braiding. *See Mo. Bd. of Cosmetology and Barber Exam'rs v. Chiteshe*, AHC Case No. 13-1111 CB.

38. The Board's enforcement is also evidenced by the recently dismissed proceeding, *Missouri Board of Cosmetology and Barber Examiners v. Backe*, Case No. 12-2177 CB.

10

**Missouri's Cosmetologist License Requirements**

39.     Mo. Rev. Stat. § 329.030 provides that it is "unlawful for any person in this state to engage in the occupation of cosmetology or to operate an establishment or school of cosmetology, unless such person has first obtained a license."

40.     Mo. Rev. Stat. § 329.050 requires applicants for the cosmetology licensing exam to satisfy one of the three following conditions:

   a.   Graduate from a licensed school with no less than 1,500 hours of training or the equivalent credit hours with the exception of public vocational technical schools in which a student shall complete no less than 1,220 hours of training,

   b.   Complete a cosmetology apprenticeship under the supervision of a licensed cosmetologist of no less than 3,000 hours, or

   c.   Graduate from a cosmetology school or apprenticeship program in another state which has substantially the same requirements as a Missouri-licensed educational establishment.

41.     In order to become a licensed Missouri cosmetologist an applicant must complete a written and a practical exam pursuant to Mo. Rev. Stat. § 329.100.

42.     Mo. Rev. Stat. § 329.045 requires that "[e]very establishment in which the occupation of cosmetology is practiced shall be required to obtain a license from the [B]oard." Pursuant to Mo. Code Regs. Ann. tit. 20, § 2085-10.010, an establishment ("salon") license can be acquired through application to the Board and payment of an establishment licensing fee.

**Missouri's Cosmetology School Curriculum**

43.     The Missouri cosmetology licensing rules are found at Mo. Rev. Stat. §§ 329.010 et seq. and Mo. Code Regs. Ann. tit. 20, §§ 2085-1.010 et seq.

44.     Mo. Code Regs. Ann. tit. 20, § 2085-12.050 establishes the mandatory cosmetology public vocational technical school curriculum.

45.     The  public vocational technical school curriculum, requiring 1,220 hours of training, consists of instruction in the following areas for the following durations:

> (1) Shampooing of all kinds, forty hours;
> (2) Hair coloring, bleaches and rinses, one hundred thirty hours;
> (3) Hair cutting and shaping, one hundred thirty hours;
> (4) Permanent waving and relaxing, one hundred and fifty hours;
> (5) Hair setting, pin curls, fingerwaves, thermal curling, two hundred and thirty hours;
> (6) Combouts and hair styling techniques, one hundred and five hours;
> (7) Scalp treatments and scalp diseases, thirty hours;
> (8) Facials, eyebrows and arches, forty hours;
> (9) Manicuring hand and arm massage, and treatment of nails, one hundred and ten hours;
> (10) Cosmetic chemistry, twenty-five hours;
> (11) Salesmanship and establishment management, ten hours;
> (12) Sanitation and sterilization, thirty hours;
> (13) Anatomy, twenty hours;
> (14) State law, ten hours;
> (15) Misc. lectures and test review, one hundred and sixty hours.

46.     By law, the curriculum for public vocational technical schools must take at least six months.

47.     In Missouri, public vocational technical schools providing cosmetology instruction in preparation for the cosmetology licensing exam are only available for individuals pursuing secondary (high school) education.

12

48.   Those individuals who are ineligible to enroll in a public vocational technical school can

attend a licensed cosmetology school.

49.   Mo. Rev. Stat. § 329.040(4) establishes the mandatory licensed cosmetology school

curriculum.

50.   The licensed cosmetology school curriculum, which requires 1,500 hours of training,

consists of instruction in the following areas for the following durations:

(1) Shampooing of all kinds, forty hours;
(2) Hair coloring, bleaches and rinses, one hundred thirty hours;
(3) Hair cutting and shaping, one hundred thirty hours;
(4) Permanent waving and relaxing, one hundred twenty-five hours;
(5) Hairsetting, pin curls, fingerwaves, thermal curling, two hundred
      twenty-five hours;
(6) Combouts and hair styling techniques, one hundred five hours;
(7) Scalp treatments and scalp diseases, thirty hours;
(8) Facials, eyebrows and arches, forty hours;
(9) Manicuring, hand and arm massage and treatment of nails, one
      hundred ten hours;
(10) Cosmetic chemistry, twenty-five hours;
(11) Salesmanship and shop management, ten hours;
(12) Sanitation and sterilization, thirty hours;
(13) Anatomy, twenty hours;
(14) State law, ten hours;
(15) Curriculum to be defined by school, not less than four hundred
      seventy hours.

51.   Upon information and belief, attendance at a licensed cosmetology school in Missouri

can cost more than $16,000, which is the cost of tuition and mandatory school supplies at

the Grabber School of Hair Design located at 9833 Watson Road, St. Louis, Missouri

63126.

52.   Mo. Code Regs. Ann. tit. 20, § 2085-12.050 establishes the mandatory

cosmetology apprenticeship curriculum.

53.   The apprenticeship curriculum, requiring at least 3,000 hours of training,

consists of instruction in the following areas for the following durations:

13

(1) Shampooing of all kinds, eighty hours;

(2) Hair coloring, bleaches and rinses, two hundred and sixty hours;

(3) Hair cutting and shaping, two hundred and sixty hours;

(4) Permanent waving and relaxing, two hundred and fifty hours;

(5) Hair setting, pin curls, fingerwaves, thermal curling, four hundred and fifty hours;

(6) Combouts and hair styling techniques, two hundred and ten hours;

(7) Scalp treatments and scalp diseases, sixty hours;

(8) Facials, eyebrows and arches, eighty hours;

(9) Manicuring hand and arm massage, and treatment of nails, two hundred and twenty hours;

(10) Cosmetic chemistry, fifty hours;

(11) Salesmanship and establishment management, twenty hours;

(12) Sanitation and sterilization, sixty hours;

(13) Anatomy, forty hours;

(14) State law, twenty hours;

(15) Misc. lectures and test review, nine hundred and forty hours.

54.     At most, only a portion of the 30 hours—as required by the licensed cosmetology and public vocational technical school curriculums—or 60 hours—as required by the apprenticeship program—of sanitation and sterilization training is relevant to the practice of African-style hair braiding.

55.     Of the 1,220, 1,500 or 3,000 hours of training required to become a licensed cosmetologist, well over a thousand hours of instruction are dedicated to topics, techniques, and styles that are irrelevant to African-style hair braiding.

56.     Upon information and belief, to the extent that the cosmetology curriculum does address how to style textured or African hair at all, it teaches about the use of heat or chemicals to relax, straighten, soften, or otherwise alter the hair from its natural, textured state.

14

57.     The cosmetology curriculum does not include African-style hair braiding techniques or styles as a component of mandatory cosmetology education or training.

**Effects of Treating African-Style Hair Braiding as Cosmetology**

58.     Although the Board treats African-style hair braiding as cosmetology, the Board-approved cosmetology curriculum does not require cosmetology schools to teach African-style hair braiding, which consists of braiding, locking, twisting, weaving, cornrowing, or otherwise physically manipulating hair without the use of chemicals.

59.     Missouri cosmetology schools, including both public vocational technical and licensed cosmetology schools, do not teach African-style hair braiding.

60.     Missouri does not test applicants on African-style hair braiding or natural hair care techniques in order to become a licensed cosmetologist.

61.     Conversely, preparation for the examination does require extensive knowledge of practices that are antithetical to the principles and cultural foundations of African-style hair braiding.

62.     Under Missouri's cosmetology regime, someone versed in African-style hair braiding may not provide African-style hair braiding for compensation without a cosmetology license.

63.     At the same time, someone with a cosmetology license is not required to have any experience or skills in African-style hair braiding in order to provide African-style hair braiding for compensation.

64.    The state's regulations irrationally limit the lawful provision of African-style hair braiding only to those who are not required to know anything about African-style hair braiding, while precluding those who are specifically skilled in these techniques from lawfully offering their services to the public unless they obtain an irrelevant license to practice a different profession.

65.    Missouri's cosmetology regime irrationally treats differently situated people the same by treating African-style hair braiders exactly like cosmetologists, despite the two professions being substantially different.

66.    Missouri's cosmetology regime subjects African-style hair braiders to regulations and licensing requirements designed for and relevant to the practice of cosmetology, which does not include or resemble African-style hair braiding.

67.    Furthermore, the cosmetology regime irrationally treats similarly situated people differently by requiring African-style hair braiders to acquire a cosmetology license when they braid for compensation, while not requiring African-style hair braiders to have a cosmetology license when they braid for free.

68.    The current cosmetology regime has the intent and effect of establishing and maintaining a cartel for cosmetology services within Missouri. Regulations and practices are developed and enforced by the Board, which is comprised of nine practitioners within the regulated cosmetology and barber industries and only two members of the public (as required by Mo. Rev. Stat. § 329.015(2)).

69.     Because of the regulatory barriers to entry into this profession, African-style hair braiders are deprived of entrepreneurial employment and training opportunities. These barriers have a particularly harsh impact on low-income individuals in the African American and African immigrant communities.

70.     The current cosmetology regulatory regime drives some African-style hair braiders "underground" or into unnecessary arrangements in order to avoid investigation and prosecution. For example, African-style hair braiding will often be performed out of the hair braider's home. Some African-style hair braiders have partnered with licensed cosmetologists or fashioned their businesses as hair-product retail stores in order to avoid Board inspectors. Among many customers of African-style hair braiding, the existence of a thriving underground economy is an open secret. Braiders in the underground economy, however, constantly risk prosecution and reasonably fear advertising their services.

71.     The current cosmetology regulatory scheme has produced a dearth of good options for consumers who wish to purchase African-style hair-braiding services.

    a.  The vast majority of licensed cosmetologists do not offer African-style hair-braiding services. If a licensed cosmetologist does braid, she can charge high fees because of a lack of "legal" competition.

    b.  Some consumers may patronize unlicensed African-style hair braiders, who know how to braid and may charge less than a licensed cosmetologist. But these unlicensed braiders, if they receive payment, are

17

violating Missouri law and are subject to sanctions, and are thus deterred from providing their services.

c.  Some consumers may rely on friends and family to braid without compensation. But these braiders must dedicate long hours for no pay, and thus are deterred from providing their services.

d.  Some consumers leave the state of Missouri entirely to receive African-style hair-braiding services in states, like Kansas or Illinois, that do not have cosmetology licensing regimes that regulate a harmless activity into non-existence.

72.  Moreover, the current cosmetology regulatory regime prevents African-style hair braiders from more effectively advertising their services and expanding their businesses for fear of being subject to sanctions from the Board and forced to acquire an irrelevant cosmetology license.

**Harms to Plaintiff Ndioba "Joba" Niang Caused by Missouri's Licensing Scheme**

73.  Application of the current cosmetology regulatory regime to African-style hair braiders has caused and will continue to cause substantial harm to Joba.

74.  Joba cannot legally braid for money unless she spends thousands of hours and dollars on training that teaches her information and skills she does not need to know to continue her craft. Furthermore, she must sit for an examination that will test her on information and skills that bear absolutely no relation to African-style hair braiding.

75.    Joba is ineligible to attend a public vocational technical school and otherwise cannot afford to spend 1,220 hours receiving irrelevant training instead of supporting her family.

76.    Joba would be forced to either attend a licensed cosmetology school or enroll in a cosmetology apprenticeship in order become a licensed cosmetologist. Joba cannot afford to spend thousands of hours—at least 1,500 hours at a licensed cosmetology school or at least 3,000 hours in a cosmetology apprenticeship—learning skills she does not need or use in the practice of African-style hair braiding instead of supporting her family.

77.    Joba cannot afford to pay for a licensed cosmetology school, which can cost more than $16,000 to attend, in order to receive training that is irrelevant to African-style hair braiding.

78.    Joba would be forced to handle potentially hazardous chemicals during cosmetology training that she does not want to handle and would not otherwise handle as an African-style hair braider.

79.    Because Joba provides African-style hair braiding for compensation, she risks punishment—including a criminal conviction, up to fifteen days in jail, and fines up to $300—if she continues to perform African-style hair braiding.

80.    Joba is member of a West African hair-braiding community in the St. Louis area and personally knows that several members of that community, including personal friends of hers, were recently investigated and sued by the

Board in administrative proceedings for the unlicensed practice of African-
style hair braiding.

81.     But for Missouri's cosmetology licensing requirements, Joba would not have
obtained a salon license, nor would she have accommodated a licensed
cosmetologist at her business in order to avoid the Board's arbitrary
enforcement of irrelevant cosmetology regulations against her and her
African-style hair-braiding business.

82.     Every day that Joba remains in business she risks being targeted by the
Board's enforcement of the cosmetology licensing requirements on African-
style hair braiders. Joba reasonably fears that it is only a matter of time
before she is investigated and sued by the Board. If she is sued by the Board,
Joba does not believe she will be able to keep her business open.

83.     Joba provides professional, high-quality services. Yet the cosmetology
regulations constantly threaten to impair her ability to practice her chosen
profession, maintain her thriving community business, and support her
family.

**Harms to Plaintiff Tameka Stigers Caused by Missouri's Licensing Scheme**

84.     Application of the current cosmetology regulatory regime to African-style
hair braiders has caused and will continue to cause substantial harm to
Tameka.

85.     Tameka cannot legally braid for money unless she spends thousands of hours
and dollars on training that teaches her what she does not need to know to

continue her craft. Further, she must sit for an examination that will test her on information and skills that bear absolutely no relation to African-style hair braiding.

86. Tameka is ineligible to attend a public vocational technical school and otherwise cannot afford to spend 1,220 hours receiving irrelevant training instead of supporting her family.

87. Tameka would be forced to either attend a licensed cosmetology school or enroll in a cosmetology apprenticeship in order become a licensed cosmetologist. Tameka cannot afford to spend thousands of hours—at least 1,500 hours at a licensed cosmetology school or at least 3,000 hours in a cosmetology apprenticeship—learning skills she does not need or use in the practice of African-style hair braiding instead of supporting her family.

88. Tameka cannot afford to pay for a licensed cosmetology school, which can cost more than $16,000 to attend, in order to receive training that is irrelevant to African-style hair braiding.

89. Tameka would be forced to handle potentially hazardous chemicals during cosmetology training that she does not want to handle, would not otherwise handle as an African-style hair braider, and that are contrary to her commitment to natural hair care.

90. Because Tameka provides African-style hair braiding for compensation, she risks punishment— including a criminal conviction, up to fifteen days in jail, and fines up to $300—if she continues to perform African-style hair braiding. Tameka knows that other African-style hair braiders in the St.

Louis area have been investigated and sued by the Board in administrative proceedings and worries that it is only a matter of time before she is also targeted by the Board's enforcement efforts.

91.    But for Missouri's requirement that African-style hair braiders obtain a cosmetology license before practicing their craft for money, Tameka would have been able to expand her business earlier. Additionally, Tameka would not have made plans to enter into a cosmetology apprenticeship, which requires at least 3,000 hours of irrelevant training and hundreds of dollars, so that she could continue to offer her hair-braiding services without running afoul of the Board's arbitrary enforcement of irrelevant cosmetology regulations. If this lawsuit is unsuccessful and the Board continues to enforce the cosmetology licensing requirements against African-style hair braiders, Tameka will be forced to enter into the irrelevant, time-consuming, and wasteful cosmetology apprenticeship program or stop providing African-style hair braiding for compensation at her own business.

92.    Tameka provides professional, high-quality services. Yet the cosmetology regulations constantly threaten to impair her ability to practice her chosen profession, maintain her thriving community business, and support her family.

## Count I

### (Substantive Due Process)

93.    Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 through 92 of this Complaint as set forth fully herein.

94.   The Due Process Clause of the Fourteenth Amendment protects the right to earn a living in the occupation of a person's choice subject only to reasonable government regulation.

95.   Missouri's current cosmetology law and regulations as applied to Plaintiffs by Defendants, their agents and employees, acting under the color of state law, arbitrarily and unreasonably prohibit Plaintiffs from pursuing their chosen livelihood by forcing them to obtain a license that is irrelevant to their profession and subjecting them to criminal penalties and fines, thus threatening the existence, profitability, and potential growth of their businesses. The arbitrary diminution of Plaintiffs' economic liberty by the imposition of these regulations deprives them of due process as guaranteed by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

96.   Requiring African-style hair braiders to undergo at least 1,500 hours of irrelevant cosmetology training, which does not teach or involve African-style hair braiding, is not rationally related to any legitimate government interest.

97.   As a direct and proximate result of Defendants' application of the cosmetology regime to African-style hair braiders, including Plaintiffs, African-style hair braiders have no other adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights. Unless Defendants are enjoined from committing the above-described constitutional violations of the Due Process

Clause of the Fourteenth Amendment, African-style hair braiders, including

Plaintiffs, will continue to suffer great and irreparable harm.


## Count II

### (Equal Protection)

98.     Plaintiffs incorporate and reallege the allegations contained in paragraphs 1

through 92 of this Complaint as set forth fully herein.

99.     Requiring African-style hair braiders to attend cosmetology school or

undergo extensive cosmetology training in order to obtain a cosmetology

license, while neglecting instruction or training on the natural hair care needs

of persons with textured hair, is not rationally related to public health or

safety. By not providing an equal opportunity for individuals trained in the

practice of African-style hair braiding to lawfully offer their services to meet

public demand, Defendants, their agents, and employees, acting under color

of state law, violate Plaintiffs' right to equal protection of the laws as

guaranteed by the Fourteenth Amendment of the United States Constitution

and 42 U.S.C. § 1983.

100.    The right to equal protection protects not just similarly situated people from

being treated differently, but also differently situated people from being

treated similarly. African-style hair braiders do not provide cosmetology

services and do not hold themselves out as cosmetologists; thus, under the

right to equal protection, Plaintiffs cannot be subject to the same regulations

and licensing requirements as cosmetologists.

101.   Furthermore, the requirement that African-style hair braiders become licensed cosmetologists only if they are compensated for their services is not rationally related to any legitimate government interest.

102.   As a direct and proximate result of Defendants' application of Missouri's cosmetology laws and regulations against African-style hair braiders, including Plaintiffs, African-style hair braiders have no other adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights. Unless Defendants are enjoined from committing the above-described constitutional violations of the Equal Protection Clause of the Fourteenth Amendment, African-style hair braiders, including Plaintiffs, will continue to suffer great and irreparable harm.

## Count III

### (Privileges or Immunities)

103.   Plaintiffs incorporate and reallege the allegations contained in paragraphs 1 through 92 of this Complaint as set forth fully herein.

104.   The Privileges or Immunities Clause of the Fourteenth Amendment protects the right to earn a living in the occupation of a person's choice subject only to reasonable government regulation.

105.   Application of Missouri's current cosmetology laws and regulations arbitrarily and unreasonably impairs Plaintiffs' ability to pursue their chosen livelihood by forcing them to obtain a license that is irrelevant to their profession and subjecting them to criminal penalties and fines, thus

25

threatening the existence, profitability, and potential growth of their

businesses, in violation of the privileges or immunities guarantee of the

Fourteenth Amendment to the United States Constitution.

106.    As a direct and proximate result of Defendants' application of Missouri's

cosmetology laws and regulations against African-style hair braiders,

including Plaintiffs, African-style hair braiders have no other adequate legal,

administrative, or other remedy by which to prevent or minimize the

continuing irreparable harm to their constitutional rights. Unless Defendants

are enjoined from committing the above-described constitutional violations

of the Privileges or Immunities Clause of the Fourteenth Amendment,

African-style hair braiders, including Plaintiffs, will continue to suffer great

and irreparable harm.

### Request for Relief

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    An entry of judgment declaring that the cosmetology licensing regime—Mo.

Rev. Stat. §§ 329.010 et seq., and the implementing rules and regulations,

Mo. Code Regs. Ann. tit. 20, §§ 2085-1.010 et seq., and the practices of the

Missouri Board of Cosmetology and Barber Examiners—unconstitutional

when applied to African-style hair braiders generally and to Plaintiffs

specifically;

B.    A permanent injunction prohibiting Defendants from enforcing Mo. Rev.

Stat. §§ 329.010 et seq., and Mo. Code Regs. Ann. tit. 20, §§ 2085-1.010 et

seq., against African-style hair braiders generally and to Plaintiffs

specifically;

C.  An award of attorneys' fees, costs, and expenses in this action pursuant to 42

U.S.C. § 1988; and

D.  All further legal and equitable relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 16th day of June, 2014.

**INSTITUTE FOR JUSTICE**

Dan L. Alban* (Virginia Bar No. 72688)
Gregory R. Reed* (Maryland Bar No. not assigned)
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: dalban@ij.org, greed@ij.org

*Counsel for Plaintiffs*

*\*Pro hac vice applications to be filed*

**BRYAN CAVE LLP**

/s/ Jerry M. Hunter
Jerry M. Hunter (Missouri Bar No. 28800)
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Tel: (314) 259-2772
Fax: (314) 552-8772
Email: jmhunter@bryancave.com

*Local Counsel*